**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **U.S. EQUAL EMPLOYMENT** | ) |
| **OPPORTUNITY COMMISSION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )           **2:17-cv-01251-CRE** |
| | ) |
| **NORFOLK SOUTHERN** | ) |
| **CORPORATION AND NORFOLK** | ) |
| **SOUTHERN RAILWAY COMPANY,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Cynthia Reed Eddy, United States Magistrate Judge.

### I.        INTRODUCTION

Pending before the Court is a partial motion to dismiss filed by defendants Norfolk

Southern Corporation and its wholly-owned subsidiary Norfolk Southern Railway Company

(collectively, "Norfolk"). (ECF No. 20).  Norfolk seeks dismissal of certain claims brought by

plaintiff U.S. Equal Employment Opportunity Commission ("the EEOC") on the grounds of

timeliness and failure to exhaust administrative remedies.  For the reasons stated herein, the

motion will be denied.

The EEOC brings the amended complaint against Norfolk pursuant to Section 107(a) of

the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates

by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"),

42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991,

42 U.S.C. § 1981a, both to correct unlawful employment practices on the basis of disability and

to provide appropriate relief to individuals identified and presently unidentified. (ECF No. 17 at ¶ 1). The EEOC alleges that Norfolk "failed to hire job applicants or medically disqualified employees from further employment because of their actual disabilities, records of disability, or because they were regarded as disabled; denied reasonable accommodations to individuals with disabilities; engaged in unlawful disability-related inquiries/examinations; and used qualification standards that screened out or tended to screen out individuals with disabilities accommodations to individuals with disabilities; and used qualification standards that screened out or tended to screen out individuals with disabilities." (Id. at ¶ 20).

## II.     PROCEDURAL BACKGROUND

The EEOC filed its original complaint against Norfolk on September 27, 2017. (ECF No. 1). On November 17, 2017, Norfolk filed a partial motion to dismiss the complaint, (ECF No. 10), rendered moot and dismissed  (ECF No.19) when on December 17, 2017, the EEOC filed an amended complaint. (ECF No. 17). On January 2, 2018, Norfolk filed their partial motion to dismiss the amended complaint. (ECF No. 20).  Norfolk also filed a brief in support of the partial motion to dismiss. (ECF No. 21, *errata* 23, 27, 28).  On January 24, 2018, the EEOC filed a brief in opposition to the partial motion to dismiss. (ECF No. 33), and on January 31, 2018 Norfolk filed a reply brief. (ECF No. 35). Accordingly, the partial motion to dismiss is ripe for adjudication.

## III.    STATEMENT OF FACTS

Relevant to Norfolk's partial motion to dismiss are the following allegations.

*Named employees*

Norfolk discriminated against four of their employees due to their disabilities. The first of these employees to file a charge of discrimination with the EEOC was Jesse Blankenship ("Mr.

Blankenship"). Mr. Blankenship was employed by Norfolk as a machinist at their Roanoke, Virginia locomotive shop beginning in 2004. (ECF No. 17 at ¶ 137). After working on locomotives for several years, Mr. Blankenship later was assigned to Norfolk's "diesel shop," where he worked on engines. (Id.).

Mr. Blankenship has a physical impairment, coronary artery disease with ischemia, that substantially limits one or more life activities and Norfolk, acting through their internal medical department ("NSMD"), which gathers medical information about Norfolk personnel and evaluates that information to determine if an employee is to be medically disqualified from the position they held, regarded Mr. Blankenship as having a disability by medically disqualifying him from his job, and placing him on unpaid, indefinite medical suspension, because of his non-transitory and non-minor impairment. (Id. at ¶¶ 13, 136). In September 2008, while assigned to Norfolk's diesel shop, Mr. Blankenship underwent emergency cardiac surgery, and was on a medical leave of absence until March 23, 2009, when his cardiologist released him to return to work without restrictions. (Id. at ¶ 138). Despite this clearance by his cardiologist, Norfolk refused to return Mr. Blankenship to work; by letter from NMSD dated August 4, 2009, Norfolk medically disqualified Mr. Blankenship from his job, and suspended him indefinitely without pay, because of his physical impairment. (Id. at ¶ 139).

It is further alleged that at all relevant times, Norfolk maintained and applied a medical standard that employees in certain positions, including but not limited to machinists such as Mr. Blankenship, be free of cardiac ischemia. (Id. at ¶ 140). Norfolk removed Mr. Blankenship from his position as a machinist because Mr. Blankenship could not demonstrate that he was or would be free of cardiac ischemia. (Id. at ¶ 141). Norfolk placed Mr. Blankenship on unpaid medical suspension because of his cardiac ischemia pursuant to their policy of not hiring job applicants

and medically disqualifying employees from further employment because of their actual disabilities, records of disability, or because they were regarded as disabled; denying reasonable accommodations to individuals with disabilities; engaging in unlawful disability-related inquiries/examinations; and using qualification standards that screened out or tended to screen out individuals with disabilities. (Id. at ¶¶ 20, 142). Norfolk failed to provide reasonable accommodation to Mr. Blankenship for his disability, in the form of an exemption from their blanket policy, based upon an individualized assessment of Mr. Blankenship's actual experience with the effects (or lack thereof) of his coronary artery disease with ischemia. (Id. at ¶ 142). Norfolk placed Mr. Blankenship on unpaid medical suspension because of his actual disability and because he was regarded as disabled by Norfolk. (Id. at ¶ 143).

The three other employees discriminated against by Norfolk based upon their disabilities were Terry Vogel, Robert Workman, and Rashad Robinson. (Id. at ¶¶ 35-49, 25, 130, 133-134, 151, 154, 157-159).

*Named Applicants*

It is further alleged that thirteen individuals also applied to Norfolk for a variety of jobs but were not hired by Norfolk because of their disabilities: (1) Jason Phipps; (2) Jonathan Ryan; (3) Anthony Wooten; (4) Robert Garrity; (5) Matthew Kelley; (6) Christopher Kososki; (7) Robert Lee; (8) Zenas Dowdell; (9) Randy Nosal; (10) Noah Wright); (11) Phillip Tyson; (12) Michael Davis; and (13) Adam Worthing. (Id. at ¶¶ 21-34, 56-67, 72-120, 145-150, and 167-182).

*Unidentified Employees and Applicants*

In addition to the seventeen named employees and applicants whom Norfolk discriminated against due to their disabilities, since at least December 13, 2008, Norfolk has

barred presently unidentified employees from employment in certain positions because those persons were receiving chemotherapy for cancer, had non-paralytic orthopedic impairments, and arthritis, without consideration of whether, or to what extent, those impairments actually affected their ability to safely perform the essential functions of the positions they held with Norfolk. (Id. at ¶¶ 29, 69, 122). It is further alleged that since at least December 13, 2008, Norfolk also has maintained and applied a medical standard that barred presently unidentified job applicants and presently unidentified employees from employment in certain positions from working in those positions at Norfolk if they were currently taking prescribed medications for drug addiction treatment, such as suboxone or methadone, or if, at the time of their medical evaluation by Norfolk, it had been less than one year since they last took such medications, regardless of the actual effect of such medications or time period being off such medications had on the individual job applicants' or employees' ability to safely perform the essential functions of the jobs at issue. (Id. at ¶ 50).

More than thirty days prior to the institution of this lawsuit, Mr. Blankenship, Randy Nosal, Jason Phipps, Rashad Robinson, Jonathan Ryan, Philip Tyson, Terry Vogel, and Robert Workman filed charges with the EEOC alleging violations of the ADA by Norfolk. (Id. at ¶ 14). Thereafter, on various dates between October 2011 and July 2015, the EEOC issued to Norfolk Letters of Determination finding reasonable cause to believe that Norfolk was violating the ADA and inviting Norfolk to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief. (Id. at ¶ 15). The EEOC and Norfolk were unable to conciliate and the EEOC filed this enforcement action. (Id. at ¶¶ 16-18).

.

Broadly speaking the EEOC seeks entry of a permanent injunction enjoining Norfolk from engaging in discrimination and an order to make whole the individuals involved through the awarding of backpay, job search expenses, medical expenses, compensation for past and future nonpecuniary losses, punitive damages, and costs.

## IV.    DISCUSSION

### A.  Motion to Dismiss – Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the Amended Complaint will survive the Defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where a complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87). This plausibility standard, however, "does not impose a heightened pleading requirement." *Id.* In other words, "courts cannot inject evidentiary issues into the plausibility determination." *Id.* The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

### B. Matters outside the pleadings

In support of their motion to dismiss, Norfolk relies upon, and attached to their motion to partially dismiss the EEOC's amended complaint: (1) the EEOC's October 15, 2009 Notice of Mr. Blankenship's Charge of Discrimination against Norfolk; (2) Mr. Blankenship's March 5, 2010 Charge of Discrimination against Norfolk; (3) Robert Workman September 22, 2010 Charge of Discrimination against Norfolk; (4) Rashad Robinson's January 18, 2011 Charge of Discrimination against Norfolk; (5) Terry Vogel's May 17, 2012 Charge of Discrimination against Norfolk; (6) Randy Nosal's August 4, 2011 Charge of Discrimination against Norfolk;

(7) Jason Phipps's December 5, 2011 Charge of Discrimination against Norfolk: (8) Jason

Ryan's June 5, 2012 Charge of Discrimination against Norfolk; (9) Phillip Tyson's February 4,

2015 Charge of Discrimination against Norfolk; and (10) a November 14, 2012 letter from the

EEOC to Norfolk.  (ECF Nos. 28-1, 28-2, 28-3, 28-4).

Likewise, the EEOC has provided for our consideration matters outside the pleadings.

Specifically, the EEOC relies upon and attached to its brief, Mr. Blankenship's October 9, 2009

EEOC Intake Questionnaire. (ECF No. 33-1).  The questionnaire predates the EEOC's October

15, 2009 Notice of Charge of Discrimination.

As a general rule, a district court may not consider matters outside of the complaint when

ruling on a Rule 12(b)(6) motion to dismiss. "If, on a motion under Rule 12(b)(6) ... matters

outside the pleadings are presented to and not excluded by the court, the motion must be treated

as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, for Rule

12(b)(6) purposes, courts may consider: (1) exhibits that are attached to the complaint; (2)

matters of public record; and (3) any undisputedly authentic document that a defendant attaches

as an exhibit to a motion to dismiss if the document is integral to or explicitly relied upon in the

complaint.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997);

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("A

court may consider an undisputedly authentic document that a defendant attaches as an exhibit to

a motion to dismiss if the plaintiff's claims are based on the document.").

All of the EEOC documents submitted by the parties are public records. *See Stull v.

Leedsworld,* Civ. No. 17-378, 2018 WL 576241, at *3 n. 2 (W.D. Pa. Jan. 26, 2018) ("the

decisions of district courts within this circuit that have held an EEOC charge of discrimination

and other related documents (e.g., right to sue letter, intake questionnaire) are public records, and

therefore, a court may consider these documents without converting a motion to dismiss into a motion for summary judgment") (citations omitted); *Miller v. Downtown Bid Services Corp.,* 281 F. Supp. 3d 15, 18 n. 5 (D. D.C. 2017); *Thomas v. Lowe's Home Centers, Inc.*, Civ. No. 13-0779, 2014 WL 545862, at *2 (W.D. La. Feb. 10, 2014); *Larkins v. Regional Elite Airline Servs., LLC*, Civ. No. 12-139, 2013 WL 1818528, at *3 n. 1 (S.D. Ohio Apr. 29, 2013); *Davis v. Solid Waste Servs., Inc.*, Civ. Nos. 12-5628, 12-5629, 12-5630, 2013 WL 1234727, at *2 n. 2 (E.D. Pa. Mar. 5, 2013).

Additionally, the documents submitted by Norfolk are integral to the EEOC's amended complaint. *See Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000), *aff'd,* 276 F.3d 579 (3d Cir. 2001) ("it is clear to us that under the applicable legal standard we may consider the EEOC charge and related EEOC documents including the letter from the EEOC summarizing its investigation, . . . either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion [to dismiss] to one summary judgment").

Accordingly, under these circumstances the Court can review the documents attached as exhibits by the parties without converting Norfolk's partial motion to dismiss into a motion for summary judgment.

### C. Analysis

#### 1. Timeliness

In its amended complaint the EEOC alleges Norfolk engaged in unlawful employment practices against a class of aggrieved individuals. There is no dispute that the EEOC may not seek relief for any individual who was subjected to discriminatory action(s) more than 300 days before the earliest charge of discrimination was filed. The dispute here arises from disagreements concerning

which date is the relevant date. Based on our review of uncontroverted, public documents provided, we note the following:

- Mr. Blankenship filled out an Intake Questionnaire on October 9, 2009. Three hundred days before October 9, 2009 is **December 13, 2008**.

- The Notice of Charge of Discrimination for individual plaintiff Blankenship was dated October 15, 2009. Three hundred days before October 15, 2009 is **December 19, 2008**.

- The EEOC Charge signed by Blankenship was dated March 5, 2010. Three hundred days before March 5, 2010 is **May 9, 2009**.

- The EEOC notified Norfolk it was consolidating its investigation of 17 individual ADA charges and that it was expanding the scope of its investigation to include Norfolk's compliance with the ADA in connection with other "possible aggrieved persons" on November 14, 2012 via a letter. Three hundred days before November 14, 2012 is **January 19, 2012.**

Norfolk argues that claims by individuals alleging discrimination by Norfolk in violation of the ADA prior to January 19, 2012 are time-barred. Norfolk avers that it first became aware that the EEOC proposed to investigate Norfolk's compliance with the ADA on behalf of persons other than the charging parties, whose claims were then under investigation, when it received the November 14, 2012 letter from the EEOC. Norfolk's initial basis for its partial motion to dismiss is that the EEOC's amended complaint should be dismissed to the extent that it alleges "claims of discrimination of any members of the alleged classes that arose before January 19, 2012, as these claims arose more than 300 days before the EEOC notified Norfolk for the first time that it would be conducting an investigation" of Norfolk's alleged discriminatory conduct. (ECF No. 21 at 2).

Alternatively, Norfolk contends that the EEOC's amended complaint should be dismissed to the extent that it alleges claims of discrimination that arose before May 9, 2009, as these claims arose more than 300 days before Jesse Blankenship filed his charge of discrimination against Norfolk with the EEOC on March 5, 2010. (Id.).

The EEOC responds that it only seeks to bring claims of discrimination against Norfolk to the extent that the claims arose on or after December 13, 2008, 300 days before Jesse Blankenship filed his Intake Questionnaire with the EEOC on October 9, 2009, and that this is the applicable date that should be used to determine who are the claimants for which the EEOC can seek relief. (ECF No. 33 at 4-5).

We are guided by the statutory framework. This enforcement action is brought pursuant to § 706 of Title VII. Section 706 of Title VII, 42 U.S.C.A. § 2000e-5, incorporated into the ADA, contains the "Enforcement provisions of Title VII. It empowers "[t]he Commission" . . . "to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3 of this title." 42 U.S.C.A. § 2000e-5(a) (West). Section 706(e)(1) of Title VII sets forth administrative charge procedures, and makes specific reference to the filing of a "charge":

> . . . [I]n a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such **charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred,** or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C.A. § 2000e-5(e)(1) (West) (emphasis added). Thereafter:

(1) If within thirty days **after a charge is filed** with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d), the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge.

. . .

(2) Whenever a **charge is filed** with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition **of such charge**. . . .

42 U.S.C.A. § 2000e-5(f)(1) and (2) (emphasis added) (West).

Upon review of the plain language of Section 706, *supra*, the Court concludes that claims brought by the EEOC, like claims brought by private litigants, shall be limited to those claims alleged to have been based upon events that occurred within 300 days of the earliest **charge** that gave rise to the EEOC's instant enforcement action, rather than as Norfolk argues, it received actual notice of the scope of the investigation.  In this case, the earliest charge date is indisputably Mr. Blankenship's charge of discrimination, all other identified litigants having filed their charges thereafter.  The statutory language reflects Congressional intent that the charge date is intended to be the benchmark for the limitation period.

The case law supports this holding.  In *Arizona ex rel. Horne v. Geo Group, Inc.*, 816 F.3d 1189, 1203 (9th Cir. 2016) the court held that the district court erred in requiring that aggrieved employees allege an act that occurred within the 300 days before the Reasonable Cause Determination.  Rather, "[t]he proper starting date of the EEOC and Division's class action is 300 days prior to Hancock's charge, not the Reasonable Charge Determination." *Id.* The court cited the plain language of Title VII that requires a "charge" be filed "within three

hundred days after the alleged unlawful employment practice occurred . . . . the statute's timing requirement refers exclusively to the 'charge'"; *see also EEOC v. Discovering Hidden Hawaii Tours, Inc.*, Civ. No. 17-67, 2017 WL 4202156, at *6 (D. Haw. Sept. 21, 2017) ("[r]ecent district court decisions agree that Section 706 limits the class of employees on whose behalf the EEOC may seek relief to those individuals who were allegedly subjected to unlawful employment practices during the 300 days before the date of the initial Charge") (listing cases); *EEOC v. FAPS, Inc.*, Civ. No. 10-3095, 2014 WL 4798802, at *24 (D. N.J. Sept. 26, 2014) ("The plain language of Section 706(e)(1) clearly precludes the EEOC from seeking relief for individuals who could not have filed an EEOC charge during the filing period"); *EEOC v. Global Horizons, Inc.*, Civ. No. 11-257, 2014 WL 800597, at *11 (D. Haw. Feb. 28, 2014) (300-day charge-filing limitation applied to EEOC's § 706 and § 707 claims); *EEOC v. Bass Pro Outdoor World, LLC*, 884 F.Supp.2d 499, 509 (S.D. Tex. 2012) (concluding that the 300-day limitations period set forth   § 2000e-5(e) applies to EEOC pattern or practice claims brought pursuant to § 706 and § 707); *EEOC v. Bloomberg L.P.*, 751 F. Supp. 2d 628, 646 (S.D. N.Y. 2010), decision clarified on reconsideration (Dec. 2, 2010) ("[t]he EEOC may not, at least in a case alleging discrete unlawful acts, seek relief for individuals who were not subject to an unlawful employment practice some time during the 300 days preceding the filing of the triggering charge") (footnote omitted).

In support of its position, Norfolk cites to two unpublished opinions, *EEOC v. Princeton Healthcare System*, Civ. No. 10-4126, 2012 WL 5185030, at *5 (D. N.J. Oct. 18, 2012) (court granting partial motion to dismiss based upon its agreement with those courts "that have held that the ["triggering"] filing dates were the dates on which the EEOC notified defendants that it was expanding its investigation to encompass the additional charges"); *EEOC v. Freeman*, Civ.

No. 09-2573, 2011 WL 337339, at *1 (D. Md. Jan. 31, 2011) (where EEOC had filed a

discrimination complaint seeking § 706 relief on behalf of individuals, court concluded that for

claims of discrimination that were not included in the original charge, the "filing" date was the

date on which the EEOC notified the defendant that it was expanding its investigation to

encompass the new charges and not the date of the filing of the original charge). These are not

binding precedents. Any equitable exception to the charge filing date would not apply here, as

the charge specifies a category of discrimination identical to that in the EEOC's complaint, i.e.

disability discrimination by NSMD.

The next query is whether, for the purposes of starting the 300-day "clock," Mr.

Blankenship filed his charge of discrimination with the EEOC when he filed his Intake

Questionnaire with the EEOC on October 9, 2009, or when he filed his Charge of Discrimination

with the EEOC on March 5, 2010.[1] With respect to whether Mr. Blankenship's Intake

Questionnaire constitutes a charge of discrimination, in *Devine v. Trumbull Corporation*, Civ.

No. 16-1547, 2017 WL 321498 (W.D. Pa. Jan. 23, 2017)(Conti, C.J.), this court explained:

> [a]n Intake Questionnaire may be considered as a "Charge." In *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 112–13 (3d Cir. 2014), the court of appeals explained:
>
>> An EEOC filing constitutes a charge of discrimination if it satisfies the requirements of 29 C.F.R. § 1626.6, and can "reasonably [be] construed as a request for [the EEOC] to take remedial action to protect the employee's rights." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008). In *Holowecki*, the Supreme Court adopted a "permissive" interpretation of the charge requirement, explaining that a "wide range of documents," including an intake questionnaire, "may be classified as charges." *Id.* at 402, 128 S.Ct. 1147.

---

[1]Norfolk contends that the EEOC cannot amend the amended complaint by attaching the Intake Questionnaire to its opposition to Norfolk's partial motion to dismiss. (ECF No. 35 at 4-5). As already stated, Mr. Blankenship's Intake Questionnaire is a public record which this Court can consider without converting the motion to dismiss into a motion for summary judgment. Further, once Norfolk raised the limitations issue, and introduced documentation in support of its position, certainly the EEOC had the right to respond in kind, including attaching Mr. Blankenship's Intake Questionnaire to its opposition brief. *See Hildebrand v. Allegheny County*, 757 F.3d 99, 112 n. 2 (3d Cir. 2014) (appellate court considered intake questionnaire that plaintiff did not attach to his amended complaint but did attach as an exhibit to his response to defendant's motion to dismiss).

> In *Hildenbrand*, the court of appeals stated that "an employee who completes the Intake Questionnaire and checks [the box that requests the EEOC to take action] unquestionably files a charge of discrimination." *Id.* at 113.

*Devine,* 2017 WL 321498, at *2–3. (footnote omitted). The applicable regulation therein, 29 C.F.R. § 1626.6 requires a charge to be "in writing," that it "name the prospective respondent," and "generally allege the discriminatory act(s)." *Id.*

Mr. Blankenship's Intake Questionnaire (ECF No. 33-1) satisfied the requirements of 29 C.F.R. §1601.12[2] for Title VII charges. He checked Box 1 on page 4 of the Questionnaire, which states "I want to file a charge of discrimination and I authorize the EEOC to look into the discrimination I described above," can "reasonably [be] construed as a request for [the EEOC] to take remedial action to protect the employee's rights." *Devine,* 2017 WL 321498, at *3; *id.* ("[h]ere, the Intake Questionnaire faxed January 2, 2013 constitutes a 'charge' because Devine checked the box that requested the EEOC to take remedial action"). Accordingly, the Court finds that Mr. Blankenship's Intake Questionnaire constitutes a charge of discrimination and the EEOC's disability discrimination claims in this case shall be limited to those claims of disability discrimination that allegedly arose on or after December 13, 2008, 300 days prior to October 9, 2009, the date Mr. Blankenship filled out the questionnaire.

---

[2]29 U.S.C. §1601.12(a) provides:

(a) Each charge should contain the following:
(1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7;
(2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);
(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See § 1601.15(b);
(4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and
(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

*Id.*

For the above stated reasons, to the extent that Norfolk's partial motion to dismiss seeks dismissal of all claims of discrimination contained in the EEOC's amended complaint that allegedly arose before January 19, 2012, or before May 9, 2009, except those claims where an Aggrieved Individual filed a timely Charge of Discrimination, Norfolk's partial motion to dismiss shall be denied.

2. **Failure to Exhaust**

In sum, amended complaint includes claims for classes of unidentified claimants, some who are unidentified applicants and some who are unidentified employees. Two of these classes concern drug addiction. Norfolk moves to dismiss the EEOC's disability discrimination claims filed on behalf of presently unidentified applicants <u>and</u> presently unidentified employees with disabilities arising from past drug addiction, drug addiction recovery, and treatment for drug addiction. (ECF No. 20 at ¶ 11). Norfolk argues that because not one of these presently unidentified applicants or employees filed a charge of discrimination with the EEOC against Norfolk asserting such a claim, the EEOC's claims brought on their behalf must be dismissed for failure to exhaust administrative remedies. (ECF No. 21 at 13). Similarly, Norfolk moves to dismiss the discrimination claims filed on behalf of presently unidentified employees who allege disabilities arising from: 1) chemotherapy, 2) arthritis, and 3) non-paralytic orthopedic impairments. (ECF No. 20 at ¶ 12). Norfolk asserts that because not one of these presently unidentified Norfolk employees filed a charge of discrimination with the EEOC against Norfolk asserting such a claim, the EEOC's claims brought on their behalf must be dismissed for failure to exhaust administrative remedies. (ECF No. 21 at 16).

The EEOC responds that it is not required to exhaust administrative remedies prior to bringing an enforcement action. (ECF No. 33 at 12-16). With respect to its claims concerning the

presently unidentified applicants and employees  whom the EEOC alleges were discriminated against by Norfolk related to their disabilities of past drug addiction, drug addiction recovery, and treatment for drug addiction, it asserts that it does not have to identify each discrimination victim and that it has adequately alleged a practice of Norfolk discriminating against applicants and employees in their employment practices related to their disabilities of past drug addiction, drug addiction recovery, and treatment for drug addiction. (ECF No. 33 at 16-19).

With respect to its claims concerning the presently unidentified employees whom the EEOC alleges were discriminated against by Norfolk related to their disabilities of undergoing chemotherapy for cancer, arthritis and non-paralytic orthopedic impairments, the EEOC argues again that it does not have to identify each discrimination victim and that it has alleged applicants who Norfolk discriminated against related to their disabilities of undergoing chemotherapy for cancer, arthritis and non-paralytic orthopedic impairments and it is immaterial whether those individuals were applicants or employees. (Id. at 20). "The focus of EEOC's claim is the common discriminatory practice affecting workers in both sets of circumstances, i.e., the employers' illegal conduct." (Id.).

In *E.E.O.C. v. United Parcel Serv.,* 860 F.2d 372 (10th Cir. 1988), the court explained:

> The 1972 amendments to Title VII were designed to increase the EEOC's arsenal of available weapons to challenge discriminatory practices. The EEOC's mandate is to protect the public generally from ongoing discriminatory practices. In *General Telephone Co. v. EEOC*, 446 U.S. 318, 323, 100 S.Ct. 1698, 1702, 64 L.Ed.2d 319 (1980), the Supreme Court held that "Rule 23 is not applicable to an enforcement action brought by the EEOC in its own name and pursuant to its authority under § 706 to prevent unlawful employment practices." *Id*. Additionally, the Supreme Court held that "the EEOC is not merely a proxy for the victims of discrimination," *id.* at 326, 100 S.Ct. at 1704, and that the EEOC may proceed with a suit in its own name without seeking class certification on behalf of a class of individuals in order to protect the public interest in ending discriminatory employment practices. "Title VII protects all employees of and applicants for employment with a covered employer...." *Id.* at 323, 100 S.Ct. at 1702.

*United Parcel Serv.,* 860 F.2d at 374. The EEOC does not, as suggested by Norfolk, "'stand in the [Norfolk applicants and employees'] shoes'." *E.E.O.C. v. United Parcel Serv.*, Civ. No. 09-5291, 2013 WL140604, at *6 (N.D. Ill. Jan. 11, 2013) (quoting *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 297 (2002)). Actions brought by the EEOC are not class actions, but *enforcement* actions, a distinction that is critical to understanding the case *sub judice* because it is well established that "EEOC enforcement actions are not limited to the claims presented by the charging parties. Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." *Gen. Tel. Co.*, 446 U.S. at 331.

Nor does the EEOC have to identify a claimant in order to bring a claim of discrimination against a private employer. *See United Parcel Serv.*, 860 F.2d at 374 ("[u]nder Title VII, the EEOC need not produce an injured party when seeking to challenge an allegedly discriminatory policy that may affect unidentifiable members of a known class"); *E.E.O.C. v. United Air Lines, Inc.,* 132 F.R.D. 198, 199 (N.D. Ill. 1990) ("[w]e agree with the EEOC's contention that its authority to bring suit should not be dependent upon the identification of specific individuals who have suffered past injury, so long as the EEOC has a reasonable basis for concluding that a given policy is likely to have a discriminatory effect. '[T]he EEOC does not exist simply as a vehicle for conducting litigation on behalf of private parties....'") (*quoting Gen. Tele. Co. of the Northwest*, 446 U.S. at 326) (quoting *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 368 (1977)).

The November 14, 2012 EEOC letter to Norfolk gave the defendants notice of the EEOC's intent to investigate Norfolk from January 1, 2008 to the present in all of Norfolk's facilities and operations throughout the United States and its territories for broadly described violations:

disqualifying applicants or employees for employment because of disability as defined by the ADA and its amendments, subjecting employees to medical examinations and inquiries that are not job-related or consistent with business necessity, or subjecting them to medical examinations or inquiries that under the circumstances go beyond the scope permissible under the job-related and business necessity standard; failed to engage in the interactive process; and medical holds, medical qualification, or discharge that relate to improper assessment of direct threat for applicants and employees, all in violation of the ADA.

(ECF 28-4 at 1-2).

We are mindful that the EEOC must meet statutory pre-suit obligations before it can file suit against an employer for violations that have been discovered by the EEOC while investigating a charge of discrimination. *See* 42 U.S.C. § 2000e-5(b).[3]  These are:

> a charge filed with the EEOC, a notice of charge served on the employer, an investigation by the EEOC which results in a determination of reasonable cause, and an attempt at conciliation. In the event that the EEOC's efforts to conciliate fail, it may then file a civil action in federal court. These preliminary steps are integral to the statutory plan, which encourages resolution of claims, when possible, through informal channels such as conciliation and persuasion.

---

[3] 42 U.S.C. § 2000e-5(b) states in relevant part:

> Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d). If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion

42 U.S.C.A. § 2000e-5(b) (West.)

*EEOC v. Equicredit Am.,* Civ. No. 02-844, 2002 WL 31371968, at *2 (E.D. Pa. Oct. 8, 2002) (citations and footnote omitted); *E.E.O.C. v. U.S. Steel Corp.*, Civ. No. 10–1284, 2013 WL 625315, at *7 (W.D. Pa. Feb. 20, 2013) ("When EEOC sues in its own name, it may litigate only those claims which have been subjected to the complete administrative processing required by Title VII") (quoting *EEOC v. E. Hills Ford Sales, Inc.*, 445 F. Supp. 985, 987 (W.D. Pa. 1978)); *see also EEOC v. United Parcel Serv.*, Civ. No. 15-4141, 2017 WL 2829513, at *15 (E.D. N.Y. Jun. 29, 2017) (court explained that where EEOC sought to assert claims on behalf of unnamed claimants who had not filed charges of discrimination with the EEOC, "[t]o the extent that the claims of unnamed claimants arise from discrimination not 'stated in the charge itself' or "developed in the course of a reasonable investigation of that charge"—or, stated differently, to the extent that the unnamed claimants do not fall broadly within the class defined in the Letter of Determination—the EEOC may not retroactively include such claimants in the suit."); <u>FAPS</u>, 2014 WL 4798795, at *5.

Thus, the EEOC can only bring an enforcement action against Norfolk on behalf of presently unidentified applicants and employees (here, claiming Norfolk discriminated against them based upon their past drug addiction, drug addiction recovery, and treatment for drug addiction), and on behalf of presently unidentified employees (here, claiming Norfolk discriminated against them based upon their receiving chemotherapy for cancer, having arthritis, and having non-paralytic orthopedic impairments), if the EEOC has alleged, or otherwise established, that it met the requisite statutory pre-suit obligations required by 42 U.S.C. § 2000e-5(b) with respect to the claims of these presently unidentified applicants and employees. Reviewing the amended complaint, and the charge itself the Court finds that with respect to the categories of unidentified applicants and employees at issue in the partial motion to dismiss, the

EEOC has satisfied the statutory prerequisites set forth in 42 U.S.C. § 2000e-5(b) prior to filing the claims of these presently unidentified applicants and employees.  Clearly, the  presently unidentified applicants and employees who Norfolk allegedly discriminated against (due to their disabilities of past drug addiction, drug addiction recovery, and treatment for drug addiction), as well as unidentified employees who Norfolk allegedly discriminated against (based upon their disabilities of receiving chemotherapy for cancer, having arthritis, and having non-paralytic orthopedic impairments) fall within the broad class of individuals covered by this expanded investigation, and these classes of claimants would have been part of the same 42 U.S.C. § 2000e-5(b) pre-suit process as the other claims covered by the investigation described in the November 14, 2012 letter. The EEOC has alleged it made efforts at conciliation to endeavor to eliminate the alleged unlawful employment practices and provide appropriate relief and that it provided notices of failure of conciliation.  (ECF No. 17 at ¶¶ 15-18).

Norfolk's motion to dismiss these claims for failure to exhaust administrative remedies shall be denied.

## V.  CONCLUSION

For all of the above stated reasons, Norfolk Southern Corporation's and Norfolk Southern Railway Company's partial motion to dismiss the amended complaint filed against them by the U.S. Equal Employment Opportunity Commission (ECF No. 20) is denied. An appropriate Order follows.

## ORDER

AND NOW, this 11th day of September, 2018, it is hereby ORDERED, ADJUDGED, AND DECREED that the defendants Norfolk Southern Corporation's and Norfolk Southern

Railway Company's partial motion to dismiss the amended complaint filed against them by the

U.S. Equal Employment Opportunity Commission (ECF No. 20) is DENIED.


/s/ Cynthia *Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge


cc:  record counsel via CM-ECF